**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the House in an Order Dated April 24, 1975.

Answered May 1, 1975.

---

House Order Propounding Question

State of Maine

In House

Whereas, it appears to the House of the 107th Legislature that the following is an important question of law and that the occasion is a solemn one; and

Whereas, it is the desire of the 107th Legislature to enact legislation to amend public laws relating to education; and

Whereas, there is pending before the House of the 107th Legislature a bill entitled: "AN ACT to Fund Public School Education," House Paper 1437, Legislative Document 1452; which Act is tabled in the House, pending final enactment, awaiting the Court's response; and

Whereas, the Legislature has suspended statutory requirements for the timing of passage of school budgets until April 30, 1975, and is contemplating a further extension of said date; and

Whereas, municipalities, School Administrative Districts and other administrative units are unable to raise and appropriate taxes for school purposes until the Legislature acts; and

Whereas, Article IX, Section 8, of the Constitution of the State of Maine provides that all taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof; and

Whereas, the constitutionality of the "excess assessment" provisions of the proposed bill have been questioned as they relate to the Constitution; and

Whereas, it is important that the Legislature be informed as to the answer to the important and serious legal question hereinafter raised; now, therefore, be it

Ordered, That the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the House, according to the provisions of the Constitution, their opinion on the following question, to wit:

QUESTION:

Would the "excess assessment" provisions of Legislative Document 1452 (Exhibit A), if enacted into law, violate the provision of Article IX, Section 8, of the Maine Constitution, which requires that all taxes upon real and personal estate, assessed by authority of the State, be apportioned and assessed equally, according to the just value thereof?

Exhibit A

# STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN HUNDRED
SEVENTY-FIVE

H. P. 1437 — L. D. 1452

### AN ACT to Fund Public School Education.

Emergency preamble. Whereas, Acts of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies; and

Whereas, the Legislature has suspended statutory requirements for the timing of passage of school budgets until April 30th; and

Whereas, new state valuations have combined with historic inflation to create unacceptably drastic changes in tax levies in many communities for the support of education; and

Whereas, this legislation should be passed before the assessment of local taxes for 1975; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

*Be it enacted by the People of the State of Maine,* **as follows:**

Sec. 1. 20 MRSA § 220, as last amended by PL 1973, c. 780, § 1, is further amended by adding after the 3rd paragraph a new paragraph to read:

Total expenditures for purchases of school buses used in transportation of elementary and secondary students approved by the Commissioner of Educational and Cultural Services during any single year shall not exceed $3,000,000. The amount of this limitation shall be reviewed annually by the Legislature to see if a change is warranted.

Sec. 2. 20 MRSA § 3457, first ¶, 3rd, 4th, 5th and 6th sentences, as amended, are further amended to read:

No financial assistance shall be paid until the school construction has been completed and a full report of the cost of said construction and other expenses for major capital outlay purposes is made to the commissioner. The report shall be in such form as the commissioner shall determine and shall include, but not be limited to, the following: The amount of money contributed by the district, the amount of money borrowed for major capital outlay purposes, the time within which said borrowed funds are to be repaid and the total amount to be repaid and the amount to be repaid each year, the amount of interest to be paid each year and the rate of interest, the amount of rental due the Maine School Building Authority under lease agreement between the Maine School Building Authority and the district. On the basis of all the reports on file in the office of the commissioner each year, the

commissioner shall determine the total amount to be paid to all of the School Administrative Districts and other eligible administrative units, for major capital outlay purposes, and shall apportion out of moneys appropriated for this purpose, when payments are due, to the School Administrative Districts and other eligible administrative units, the same percentage of each administrative unit's expenditures for major capital outlay purposes including principal and interest payments and any rental payments under lease agreements between the administrative units and the Maine School Building Authority as each administrative unit would be entitled to receive based on Table II of this section. In addition to the foregoing, if the district has contributed money to defray all or part of the cost of major capital outlay construction, the commissioner shall determine the amount payable to the district for this expenditure; but the commissioner shall have the discretion to pay the entire amount due in one year or he may determine that payment shall be made over a period not to exceed 5 years.

Sec. 3. 20 MRSA § 3457, 2nd ¶, first sentence, as amended, is repealed and the following enacted in place thereof:

Said apportionment shall apply similarly to payments made for major capital outlay purposes on school construction, approved by the commissioner after August 28, 1957, in administrative units where the April 1st enrollment of resident and tuition pupils in grades 9 through 12 for that year is over 500 pupils, and in all community school districts approved by the State Board of Education which incur debt after April 1, 1965; and in other smaller administrative units when in the judgment of the Legislature, on recommendation of the board, the formation of a School Administrative District by consolidation is not geographically or educationally practical.

Sec. 4. 20 MRSA § 3457, 2nd ¶, next to last sentence, as enacted by PL 1971, c. 500, § 1, is amended to read:

Any administrative unit not previously eligible for school construction aid for major capital outlay purposes under this paragraph shall now be eligible for aid for any project authorized by the unit, if school building plans and specifications were approved by the commissioner after July 1, 1969.

Sec. 5. 20 MRSA § 3457, 5th ¶ as enacted by PL 1965. c. 475, § 2. is amended to read:

When a municipality having more than 100 resident pupils educated at public expense in grades 9 through 12 has contracted with a School Administrative District to educate all of the pupils in said district in grades 9 through 12, for a period of from 5 to 20 years, said municipality shall, during the life of said contract, be paid out of moneys appropriated and apportioned for the purposes of this section, the percentage of said municipality's expenditures for major capital outlay purposes as it would be entitled to receive in that year based on Table II of this section.

Sec. 6. 20 MRSA § 3457, ¶¶ 6, 7 and 8, as amended, are repealed as follows:

"Capital outlay purposes" as the term is used in this Title shall mean the cost of new construction, expansion, acquisition or major alteration of a public school building, the cost of acquisition of all land or interest therein of any nature or description for such construction, expansion, acquisition or major alteration, and any legal appraisal or surveyors' fees or services with relation thereto, the cost of demolition, of removing any buildings or structures on land so acquired, the cost of furnishings and equipment, financing charges, insurance during construction, cost of architectural, engineering and other legal expenses, plans, specifications, estimates of costs, and such other expense as may be necessary and incidental to any construction, expansion, acquisition or major alteration of a public school building and the placing of

~~such a building in operation, and the cost of athletic fields and related physi-cal education facilities which may be included in the school project. When-ever the commissioner has approved the leasing of school facilities, the an-nual cost of such a lease to the administrative unit shall be considered as a capital outlay expenditure and shall be eligible for reimbursement the same as any other capital outlay expenditure. When aid is paid under section 3460, financing charges shall include those expenditures necessarily incurred when borrowing in anticipation of state aid~~

~~The term "school building" as used in this section shall mean any struc-ture or athletic field used or useful for schools and playgrounds, including facilities for physical education~~

~~The term "major alteration" as used in this section shall mean the cost of acquiring new equipment, the cost of converting an existing public school building to a new condition of completeness or efficiency from a worn, damaged or deteriorated condition whenever the plans for such an alteration have been approved in accordance with section 3623. The State Board of Education shall have full authority to approve or disapprove the plans for a "major alteration" of a school building and equipping the same. Without state board approval, the administrative unit may not claim state aid on the alteration project~~

Sec. 7.  20 MRSA § 3457, 12th ¶, first sentence, as last amended by PL 1973. c. 571, § 52-B, is further amended to read:

Each administrative unit shall be reimbursed the sums expended for major capital outlay projects which have been approved in accordance with sections 3457 to 3460, or any projects which have been approved by the commissioner.

Sec. 8.  20 MRSA § 3457, last ¶, first sentence, as enacted by PL 1971. c. 530, § 36-A, is amended to read:

Any administrative unit which has received, or is receiving, state construc-tion aid for major capital outlay purposes shall carry fire insurance and allied coverage upon the completed project in an amount not less than the cost or reconstruction cost of the project.

Sec. 9.  20 MRSA § 3458, sub-§§ 3 and 4, as amended. are further amended to read:

3.  **Estimated cost.**  The total estimated major capital outlay expenditures of the proposed project as approved by the board;

4.  **Percentage of state aid.**  The percentage of the total major capital out-lay expenditures which the administrative unit was qualified to receive in school construction aid for the proposed project at the time when the pro-posed project and its financing were authorized, as computed ~~from  Table II in section~~ section 2356-B and Table II of section 3457:

Sec. 10.  20 MRSA § 3459, 2nd ¶, as last amended by PL 1971, c. 610. § 22, is further amended to read:

On any eligible project heretofore or hereafter approved by the Commis-sioner of Educational and Cultural Services, a School Administrative Dis-trict to which this section is applicable shall be reimbursed the eligible a-mount of its major capital outlay expenditure upon filing the necessary re-ports with the commissioner and submitting proof that the project has been completed in accordance with approved plans, provided that the amount of such reimbursement shall not be less than the percentage of the actual major capital outlay expenditure for the project applicable to the district at the time the voters of the district authorized the school directors to bor-row in anticipation of state aid for school construction.

Sec. 11. 20 MRSA § 3459, last ¶, first sentence, as last amended by PL 1973, c. 625, § 107, is further amended to read:

This section shall apply to any School Administrative District which, between May 11, 1966 and April 27, 1967, voted to authorize its school directors to issue bonds or notes in the names of such district for major capital outlay purposes but did not authorize the borrowing of funds in anticipation of state aid for school construction for such purposes, but only if such district has not, as of July 2, 1969 pursuant to which this paragraph is enacted, issued its bonds or notes for the permanent financing of the project or projects for which such bonds or notes were authorized.

Sec. 12. 20 MRSA § 3460, 6th and 9th ¶¶, as amended, are further amended to read:

Upon completion of the project and the submission to the commissioner of a full report of the major capital outlay expenditures on the project, together with proof that the project was completed in accordance with plans approved by the commissioner and the Bureau of Public Improvements, and upon issuance by the Bureau of Public Improvements of its certificate of acceptance of the completed project, the eligible unit shall be paid the difference between the total amount of aid finally determined to be due under the project and the accumulated amount of all prior payments.

Financing costs incurred by the local administrative unit on any project for which the alternate method has been authorized shall not be included as part of the major capital outlay expenditures of the project; provided that any interest paid by a local administrative unit in borrowing on temporary loans in anticipation of state aid shall be reimbursed by the State upon application of the unit to the commissioner following the receipt of final payment of state assistance on the project, which application shall include evidence that all indebtedness incurred by the local unit in borrowing in anticipation of state aid has been liquidated through payment by the unit.

Sec. 13. 20 MRSA § 3461, as enacted by PL 1973, c. 154, § 4, is amended to read:

§ 3461. State subsidies withheld

The State shall withhold or disallow a portion of the subsidies for construction, major alterations or repairs of school buildings, defined as payments for major capital outlay purposes in section 3457 3712, subsection 11, in the event the administrative unit elects to award a contract to other than the lowest qualified bidder who has been declared acceptable by the Director of Public Improvements and the Commissioner of Educational and Cultural Services, providing that the portion of subsidy withheld does not exceed the State's share of the difference between the lowest qualified bid and the amount bid by the firm awarded the contract; or in the event the administrative unit fails to follow the procedures set forth in sections 3458, 3460 and 3623 and Title 5, sections 1741, 1742 and 1743-A.

Sec. 13-A. 20 MRSA § 3710 is enacted to read:

§ 3710. School Finance Act of 1975

This Act shall be known as the School Finance Act of 1975.

Sec. 14. 20 MRSA § 3711, as last amended by PL 1973, c. 627, § 1, is repealed and the following enacted in place thereof:

§ 3711. Intent

It is declared to be the intent of the Legislature to reduce the burden of education program costs in public schools which are borne by the property

tax to 50% and to provide 50% of the total cost of education from state appropriations.

It is further declared to be the intent of the Legislature to finance the property tax share through a uniform school tax rate applied to all administrative units alike. The uniform school tax as described in section 451 of Title 36 shall be implemented in such a way as to minimize the impact on local property taxes in any one year. The Legislature intends that a limit be placed upon additional local taxes that may be imposed on property for school purposes, thus encouraging more efficient management of the available resources.

It is further declared that it is the intent of the Legislature to reduce the education program costs in the nonprofit private schools of this State, by reducing such costs to the extent and in the manner permitted by the United States Constitution and the Constitution of this State.

Sec. 15.  20 MRSA § 3712, sub-§§ 1 to 3, as enacted by PL 1973, c. 556, § 1, are amended to read:

1.  **Operating costs.**  Elementary or secondary operating costs shall include all costs, except transportation, community services, major capital outlay, ~~that portion of the tuition costs applicable to the insured value factor in the tuition formulae~~ and debt service, reduced by tuition receipts, expenditures from all federal revenue sources except for amounts received under the provisions of Public Law 874, and reduced by expenditures for special and vocational education programs as defined in ~~subsection~~ subsections ~~4~~ 5 and 6. Operating costs shall not include the costs of maintaining the Governor Baxter State School for the Deaf, the Boys Training Center, the Stevens School, Schools in the Unorganized Territories as defined by section 1451, and the Indian schools operated pursuant to section 4719.

2.  **Average elementary per pupil operating costs.**  Elementary grades shall include a childhood educational program as defined by section 859, through grade 8. Average elementary per pupil operating costs shall be computed by dividing elementary operating costs for the preceding year, adjusted by the state average percentage change in total operating costs experienced during the 2 previous years, by the average number of resident elementary pupils, excluding those students in special education programs, on October 1st and April 1st ~~in the unit in the same fiscal year, July 1st to June 30th. Those average costs so computed shall be used in the distribution of funds to the local units for the succeeding fiscal year~~ in the preceding year.

3.  **Average secondary per pupil operating costs.**  Secondary grades shall mean grades 9 through 12. Average secondary per pupil operating costs shall be computed by dividing secondary operating costs for the preceding year, adjusted by the state average percentage change in total operating costs experienced during the 2 previous years, by the average number of resident secondary pupils, excluding full-time students in special and vocational education programs, on October 1st and April 1st ~~in the unit in the same fiscal year, July 1st to June 30th~~ in the preceding year. Any student graduating from grade 12 during the preceding ~~school~~ year prior to April 1st shall be counted as though he were in attendance on April 1st of that year. ~~Those average costs so computed shall be used in the distribution of funds to the local units for the succeeding fiscal year~~

Sec. 16.  20 MRSA § 3712, sub-§ 4, as enacted by PL 1973, c. 556, § 1, is repealed.

Sec. 17.  20 MRSA § 3712, sub-§§ 7-A, 7-B, 7-C and 7-D are enacted to read:

7-A.  **Preceding year.**  Preceding year shall mean the 2nd year prior to the year of allocation of funds.

7-B. Current year. Current year means the year immediately prior to the year of allocation of funds.

7-C. Previous years. Previous years shall mean the 2 years prior to preceding year as defined.

7-D. Maintenance of effort. Maintenance of effort is that local appropriation needed to maintain the unit's per pupil cost at the level expended in 1973-74 or the current year.

Sec. 18. 20 MRSA § 3712, sub-§ 10, as enacted by PL 1973, c. 783, § 31, is repealed and the following enacted in place thereof:

10. Debt service. Debt service for subsidy purposes shall include, but shall not be limited to, that portion of the tuition costs applicable to the insured value factor computed under section 1292 and as computed for elementary school tuition purposes and lease costs for school buildings when the leases have been approved by the commissioner.

Sec. 19. 20 MRSA § 3712, sub-§§ 11 to 13 are enacted to read:

11. Major capital outlay. For purposes of this Title, major capital outlay shall include all costs which are related to or incidental to new construction, repairs, expansion, acquisition or alteration of any building or of any undeveloped land used or useful for school purposes when such costs are not financed out of the unit's current operating budget. Major capital outlay shall also include the cost of furnishings and equipment when such costs are not financed out of the unit's current operating budget.

Total major capital outlay expenditures approved by the State Board of Education during any single year shall not exceed $25,000,000. The amount of this limitation shall be reviewed annually by the Legislature to see if a change is warranted.

When an article is submitted to the voters in any administrative unit for the purpose of authorizing the issuance of bonds or notes for major capital outlay purposes, such article shall be in such form as is required by the state board at the time of initial project approval. The article shall set forth the present school debt still outstanding, the local share of debt service under the uniform school tax, the total cost of the project and the state's share of the proposed project under the conditions existing at the time of project approval, and such other language as may be required for approval of loans by the bonding authorities.

12. Minor capital outlay. For purposes of this Title, minor capital outlay shall include all costs which are related to or incidental to new construction, repairs, expansion, acquisition or alteration of any building or of any undeveloped land used or useful for school purposes when such costs are financed out of the unit's current operating budget. Minor capital outlay shall also include the cost of furnishings and equipment when such costs are financed out of the unit's current operating budget. All minor capital outlay costs shall be a part of operating costs, as that term is defined in this section; however, operating costs, as defined in this section, for the year 1973-74 shall include a minor capital outlay amount of $10 per pupil.

13. Total education costs. Total education costs shall mean the total of elementary and secondary operating costs as computed in section 3713, subsection 1, paragraphs A and B, costs of special education programs as described by section 3713, subsection 1, paragraphs C, sub-¶ (1) and D, costs of vocational education as described by section 3713, subsection 1, paragraph C, sub-¶ (2), transportation costs as described in section 3713, subsection 1, paragraph C, sub-¶ (3), debt service costs as described in section 3713, subsection 1, paragraph C, sub-¶ (4) and paragraph E.

Sec. 20.  20 MRSA § 3713, first ¶, next to last sentence, as enacted by PL 1973, c. 556, § 1. is repealed and the following enacted in place thereof:

Fifty percent of the sum shall come from state tax sources and 50% of the sum from the uniform school tax.

Sec. 21.  20 MRSA § 3713, sub-§ 1, as last amended by PL 1973, c. 783. §§ 32 and 33, is repealed and the following enacted in place thereof:

1.  The allocation of funds to each administrative unit shall be computed by the Commissioner of the Department of Educational and Cultural Services, as follows:

A.  Multiply the average number of resident elementary pupils in the unit, excluding full-time students in special education programs, on April 1st and October 1st of the calendar year prior to the year of allocation of funds, by the state average elementary per pupil operating cost;

B.  Multiply the average number of resident secondary pupils in the unit, excluding full-time students in special education programs and full-time students in vocational education programs, on April 1st and October 1st of the calendar year prior to the year of allocation of funds, by the state average secondary per pupil operating cost;

C.  Estimate the following expenditures by computing the actual costs for the first half of the current year and by adding thereto each administrative unit's estimate of the actual costs that will be incurred by that unit for the 2nd half of the current year.  The commissioner shall have authority to amend any such estimate where he believes any such estimate to be unreasonable.  Reimbursement shall be the commissioner's estimate or the actual expenditure, if lower.

(1)  Expenditures for special education programs operated by the administrative unit less expenditures for tuition or board, or both, paid by the unit;

(2)  Expenditures for vocational education programs;

(3)  Expenditures for transportation of pupils, including the purchase of school buses;

(4)  Expenditures for debt service not included under paragraph E of this subsection for the current year.  Aid distributed under this paragraph in 1975-76 shall not exceed the actual costs incurred during this same year.

D.  Estimate the costs of special education tuition and board, or both, to be paid by the unit in the year of allocation.  Medical costs shall not be allowable as a part of a tuition charge.

E.  Estimate the costs of debt service payable in the year of allocation, other than for that part of the tuition costs applicable to the insured value factor computed under section 1292 and as computed for elementary school tuition purposes, and other than lease costs for school buildings.

Sec. 22.  20 MRSA § 3713, sub-§ 2, first ¶, as enacted by PL 1973. c. 556. § 1, is repealed and the following enacted in place thereof:

Total the amounts computed and estimated for subsection 1, paragraphs A to E.  The sum thus obtained shall become the basis for allocation to the unit, subject to adjustments as defined under subsections 3 and 12.  If the unit's allocation after adjustment under subsection 3 exceeds the unit's uniform school tax, as assessed under Title 36, sections 451 and 452, the commissioner

shall authorize payments of aid to the unit which will equal the difference between the adjusted allocation and the unit's uniform school tax.

Sec. 23.   20 MRSA § 3713, sub-§ 2, 2nd ¶, as enacted by PL 1973, c. 783. § 33-A, is repealed and the following enacted in place thereof:

The school tax certified by the State Director of Property Taxation on or after April 1st shall be used in determining the payments, if any, to the units for the subsequent year.  For 1974, twice the school tax levied by the State Tax Assessor shall be used in determining the payments, if any, to the units for the year, July 1, 1974 to June 30, 1975.

Sec. 24.   20 MRSA § 3713, sub-§ 3, first ¶, as enacted by PL 1973, c. 556. § 1, is repealed and the following enacted in place thereof:

Adjustments to the allocation as computed in subsections 1 and 2 shall be made as follows:

Sec. 25.   20 MRSA § 3713, sub-§ 3, ¶¶ A and B, as enacted by PL 1973, c. 556, § 1 and as amended by c. 783. § 34. are amended to read:

A.   If the average elementary or secondary per pupil operating cost in the unit ~~for the preceding year was~~ is ·less than the state average elementary or secondary per pupil operating cost. the per pupil allocation for elementary or secondary pupils respectively shall be limited to an increase of ⅓ of the difference between the per pupil operating cost of the unit and the state average elementary or secondary per pupil operating cost respectively;

B.   If the average elementary or secondary per pupil operating cost in the unit ~~for the preceding year~~ is above the state average elementary or secondary per pupil operating cost, the per pupil allocation for elementary or secondary pupils respectively shall be frozen at ½ the difference between the state average elementary or secondary per pupil operating cost respectively and the local average elementary or secondary per pupil operating cost respectively expended during the 1973-74 school year or the state elementary or secondary average per pupil allocation respectively, whichever is greater.  Each unit may appropriate additional local funds to maintain its average elementary or secondary per pupil operating costs at the same level as ~~computed~~ anticipated for the ~~1973-74~~ current school year.  Income received by a unit for "B" students under Public Law 874 may be used to meet the unit's share of the funds required under this subsection;

An article in substantially the following form must be used when any municipality, School Administrative District or community school district is considering the appropriation of additional local funds under this paragraph:

Article         :   To see what sum the municipality or district will raise and appropriate for maintenance of effort to maintain per pupil school operating costs at the same level as costs for the base school year, 1973-74.
Recommended $

Sec. 25-A.   20 MRSA ·§ 3713, sub-§ 3, ¶ C, last sentence, as last amended by PL 1973. c. 783. § 35. is further amended to read:

Such a unit shall be granted the adjustment at least 2 months prior to its budget meeting, when possible, upon justification of the need for such an · adjustment ~~and only upon the condition that the unit raise its share of the funds required to maintain its elementary or secondary per pupil operating cost as required by paragraph B~~.

Sec. 26.   20 MRSA § 3713, sub-§ 3, ¶ D, first ¶, as last amended by PL 1973, c. 571, § 52-D. is repealed and the following enacted in place thereof:

When an administrative unit enrolls pupils who reside on land under control of the Federal Government, or any agency thereof, or on a Federal

Military Reservation, such pupils shall be considered as resident pupils for purposes of this chapter. However, the allocation to such a unit shall be adjusted by subtracting therefrom, after all other adjustments under this section have been made, the Federal Public Law 874 receipts in the same proportion that total local revenues under the state equalization program are of total local revenues for education in the unit. In adjusting the allocation under the previous sentence, the amounts subtracted for pupils residing on land under control of the Federal Government, or any agency thereof, or on a Federal Military Reservation shall not exceed ½ of the national average expenditure per pupil, as computed by the Federal Government, times the number of such students in the unit.

Sec. 27.   20 MRSA § 3713, sub-§ 3, ¶ E, as last amended by PL 1973, c. 738, § 37. is repealed and the following enacted in place thereof:

E.   The state board is authorized to adjust, within the limits of its appropriation, state aid to reflect unusual enrollment increases when a unit documents that it cannot meet its school financial obligations within its allocation, supplemented by amounts permitted to be appropriated under paragraph B of this subsection and under subsection 11. Such an adjustment shall be added to the already computed allocation for the unit. School committees and boards of directors shall have the authority to expend funds so granted.

Sec. 28.   20 MRSA § 3713, sub-§ 3, ¶ F is enacted to read:

F.   If the amount certified to the State Director of Property Taxation by the Legislature under Title 36, section 451, is not the same as the total education costs certified by the commissioner, then all allocations shall be adjusted as directed by the Legislature, or if the Legislature does not direct how such adjustment is to be performed, then all allocations shall be adjusted pro rata.

Sec. 29.   20 MRSA § 3713, sub-§§ 4 to 7 as enacted by PL 1973. c. 556, § 1 and as amended, are repealed.

Sec. 30.   20 MRSA §.3713, sub-§ 9, first sentence, as last amended by PL 1973, c. 783. § 40, is further amended to read:

Balances of ~~state and local~~ allocations at the end of ~~June 30th each year may~~ the unit's fiscal year shall be carried forward to meet the next year's school needs in an amount not to exceed 10% of the total state and local allocation of the year just completed. Balances in excess of 10% of the total state and local allocation will be deducted from the state-local allocation for the subsequent year.

Sec. 31.   20 MRSA § 3713, sub-§§ 11, 12 and 13 are enacted to read:

11.   The legislative body of any administrative unit may, in addition to the unit's allocation under this section and in addition to any additional local funds appropriated under subsection 3, paragraph B, authorize an additional expenditure for either elementary or secondary pupils or both not to exceed a local appropriation of 1¼ mills on the state valuation of the unit in effect on January 1st of the same calendar year and 1¼ mills on the state valuation in effect on July 1st of the same calendar year. Under this subsection, an administrative unit is authorized to appropriate a maximum of $125 per pupil per year for the pupils specified in section 3713, subsection 1. If the additional school levy authorized under this subsection fails to produce $50 per pupil per mill levied, the commissioner shall add to the allocation of the unit for the unit's fiscal year a sum which, when combined with the local levy under this section shall equal $50 per pupil per mill. Said sum shall be paid no later than the last month of the unit's fiscal year.

The funds appropriated under this section shall be called local leeway funds.

An article in substantially the following form is to be used when any municipality, School Administrative District or community school district is considering the appropriation of additional local funds under this subsection:

Article　　:　To see what sum the municipality or district will authorize to be expended from local leeway for school purposes (Recommended $　　), and to see if the municipality or district will raise and appropriate the local share of $

No municipality shall appropriate toward total education costs an amount exceeding the local allocation under this section, supplemented by any amounts raised under subsection 3, paragraph B, and under subsection 9. However, upon petition to the State Board of Education and upon a showing that unusual circumstances require additional expenditures in order to avoid serious educational hardship in any administrative unit, the State Board of Education shall grant authority for additional appropriations for school purposes. Moneys appropriated under such a special grant of authority by the State Board of Education shall not be included in any future calculation of state or local average per pupil operating costs, total education costs or any component of total education costs.

12. Allocations shall be subsequently adjusted on December 31st and on June 30th of the year of distribution to reflect the actual costs of special education tuition and board, or both, paid by the unit.

13. If any administrative unit has raised the maximum local leeway, as authorized under subsection 11, such unit may appropriate additional funds as needed to maintain its average elementary or secondary per pupil operating costs at the same level as computed under section 3713, subsection 3, paragraphs A and B.

An article in substantially the following form is to be used when any municipality, School Administrative District or community school district is considering the appropriation of additional local funds under this subsection:

Article　　:　To see what sum the municipality or district will raise and appropriate for maintenance of effort to maintain per pupil school operating costs at the same level as the current year's per pupil costs.

Recommended　$

Sec. 32.　30 MRSA § 101-A is enacted to read:

§ 101-A.　Municipal school budget

Notwithstanding any public or private statute to the contrary, each municipality shall annually adopt a school budget for a period to include the next full fiscal year, beginning on July 1st and ending on June 30th. The change to a uniform school budget year shall be accomplished no later than the fiscal year which ends June 30, 1977.

Sec. 33.　36 MRSA § 292, 3rd ¶, last sentence, as repealed and replaced by PL 1969, c. 502, § 3, is amended to read:

The valuation thus determined shall be certified to the State Tax Assessor who shall, if necessary, incorporate the decision in the valuation certified pursuant to section ~~381~~ 305, subsection 1.

Sec. 34.　36 MRSA § 305, sub-§ 1, as enacted by PL 1973, c. 620, § 10, is amended by adding at the end the following:

The valuation as filed shall remain in effect until the next valuation is filed and shall be the basis for the computation and apportionment of the state and county taxes.

Sec. 35.   36 MRSA § 381, as last amended by PL 1971, c. 107, § 1, is repealed and the following enacted in place thereof:

§ 381.   State valuation; definition; to be filed with Bureau of Property Taxation annually; abatement

The term "state valuation" as used in reference to the unorganized territory in this Title, except in chapter 103 and section 1147, shall mean an annual valuation of all taxable real estate and all taxable personal property not located within a municipality. The annual valuation is to be completed by and on file in the office of the Bureau of Property Taxation prior to the assessment of the annual property tax in the unorganized territory. The annual valuation is to be based on the status of property on April 1st. In chapter 103 and section 1147 and outside of this Title, the term "state valuation" refers to the valuation filed with the Secretary of State pursuant to section 305, subsection 1.

The State Director of Property Taxation may, on his own knowledge or on written application stating the grounds therefor, make such abatements as he believes reasonable under the law. Such abatements require the approval of the Governor and Council, except when directed by the court. Appeals from the abatement decision of the State Director of Property Taxation shall be taken in accordance with sections 477 or 480, unless otherwise specified by law.

Sec. 36.   36 MRSA § 451, as last repealed and replaced by PL 1973, c. 783, § 45, is repealed and the following enacted in place thereof:

§ 451.   Rate of tax

For necessary expenses of local and State Government, a tax is assessed at the rate of 3⅞ mills on the dollar applied to a 100% valuation for the period January 1st through June 30, 1975, 9¼ mills for the fiscal year ending June 30, 1976, 10¾ mills for the fiscal year ending June 30, 1977, 12¼ mills for the fiscal year ending June 30, 1978, and 13¾ mills for the fiscal year ending June 30, 1979, and every year thereafter upon each municipality and the unorganized territory.

In addition to the above, a uniform school tax is assessed which shall be determined as follows: The Commissioner of Educational and Cultural Services, with the approval of the State Board of Education, shall annually, prior to January 15th, certify to the Bureau of the Budget the total education costs as defined. The Bureau of the Budget shall forthwith certify said sum to the Legislature with the recommendation of the Governor. The Governor's recommendation may be either to reduce, increase or to approve said sum as certified. The Legislature shall annually, prior to April 1st, certify by joint order the amount which it deems reasonably necessary for the support of public education to the State Director of Property Taxation. If the Legislature fails to act, the Governor's recommendation shall automatically be certified to the State Director of Property Taxation.

The commissioner shall annually, based on known increases in valuation, estimate the total state-wide "excess assessment," as that term is defined in section 453, and the commissioner shall include twice such estimated total state-wide "excess assessment" in his certification of total education costs under this section.

A uniform school tax is assessed at a rate equivalent to 25% of the amount certified by the commissioner for the period July 1, 1974 through June 30, 1975; and 50% of the amount certified by the Legislature for the fiscal year ending June 30, 1976 and thereafter; divided by the state valuation then in effect. The rate so determined is to be adjusted upward to the nearest ¼ mill.

The State Director of Property Taxation shall determine the tax rate and the amount to be assessed on each municipality and the unorganized terri-

tory. In any event, such rate shall never exceed whatever shall from time to time be the weighted average municipal tax rate. The "weighted average municipal tax rate" means the total municipal property taxes levied state-wide for the previous year, as determined by the State Director of Property Taxation from the annual return of municipal assessors pursuant to section 383, divided by the state valuation of municipalities in effect for the previous year adjusted to a 100% basis. The valuation as determined by the State Director of Property Taxation, as set forth in the statement filed by him as provided by section 305, subsection 1, shall be the basis for the computation and apportionment of the tax assessed.

The method for determining the amount of state tax due in a calendar year is to add the state tax for the period January 1st to June 30 of the same calendar year to the state tax for the period July 1st to December 31st of the same calendar year. The state tax as determined for a fiscal year is to be divided by 2 to establish the amount of tax for the period July 1st to December 30th or January 1st to June 30th.

The State Director of Property Taxation shall before July 1st, annually, determine the amount of state tax to be assessed and collected for the year in the unorganized territory. The rate of taxation in the unorganized territory is to be determined by dividing the amount of state tax by the total valuation of taxable property in the unorganized territory on April 1st of the same year.

Sec. 37. 36 MRSA § 452 is repealed and the following enacted in place thereof:

§ 452. Assessment of state property tax

In 1975 the state tax described in section 451 is to be assessed as of January 1, 1975 for the period January 1st through June 30, 1975. On July 1, 1975 and on each July 1st thereafter the state tax described in section 451 is to be assessed for the fiscal year ending June 30th of the following calendar year.

As soon as practicable after April 1st, annually, the State Director of Property Taxation shall certify to each municipality the amount of state tax due under section 451 in the current calendar year. The State Director of Property Taxation shall send the certification to the municipal officers of each municipality requiring them to assess the sum so certified, according to the law for the assessment of taxes and add the amount of such tax to the amount of county and municipal taxes to be by them assessed in their municipality.

Sec. 38. 36 MRSA § 453, as last repealed and replaced by PL 1973, c. 783, § 46, is repealed and the following enacted in place thereof:

§ 453. Payment of state tax by municipalities

The certification made pursuant to section 452 shall require the municipal officers to issue their warrant, requiring the collector of their municipality to collect and pay to the treasurers of their municipality the sums against said municipality required by this subchapter. The municipal treasurer shall pay to the treasurer of the School Administrative District or community school district, where such a district exists, in quarterly installments, that portion of the school tax levied under section 451 which does not exceed the municipality's share of the allocation to the administrative unit as computed and adjusted under Title 20, section 3713. The Commissioner of Educational and Cultural Services shall annually, on or before February 15th, notify the municipal officers of each municipality of the amount allocated to that municipality pursuant to Title 20, section 3713 for the coming year and of the amount of the school tax, if any, which shall be paid to the Treasurer of State. Each municipal treasurer shall pay to the Treasurer of State a sum equivalent to that portion of the school tax levied under section 451 which exceeds the municipality's share of the allocation and adjustments to the unit as com-

puted under Title 20, section 3713. For the calendar year 1975 and thereafter, payments of amounts due shall be made to the Treasurer of State in semi-annual installments payable on or before the 15th day of June and on or before the 15th day of December.

A municipality's "excess assessment" is the amount by which the current year's uniform school tax exceeds a 20% increase over the municipality's previous year's uniform school tax. Such "excess assessment," if any, shall not be treated as part of the uniform school tax levied under section 451 and shall be distributed by the municipal treasurer for the necessary expenses of local government as determined or appropriated by the legislative body of such municipality within the purposes specified in Title 30.

The tax assessed under the first paragraph of section 451, in each municipality shall be paid when collected to the treasurer thereof to be by him disbursed for necessary expenses of local government as determined or appropriated by the legislative body of such municipality within the purposes specified in Title 30.

Sec. 39. 36 MRSA § 475, as enacted by PL 1973, c. 620, § 10, is amended by adding a new sentence after the first sentence to read:

The State Director of Property Taxation in the case of the unorganized territory, on written application stating the grounds therefor, within 6 months from date of commitment may make such reasonable abatement as he thinks proper, provided the taxpayer has complied with section 1181.

Sec. 40. 36 MRSA § 476, as enacted by PL 1973, c. 620, § 10, is amended to read:

§ 476. Notice of decision

The chief assessor or the State Director of Property Taxation shall give to any person applying to him for an abatement of taxes notice in writing of his decision upon such application within 10 days after he takes final action thereon. If a chief assessor or the State Director of Property Taxation, before which whom an application in writing for the abatement of a tax is pending, fails to give written notice of his decision within 90 days from the date of filing of such application, the application shall be deemed to have been denied and the applicant may appeal as provided, unless the applicant shall in writing have consented to further delay.

Sec. 41. 36 MRSA § 477, as enacted by PL 1973, c. 620, § 10, is amended to read:

§ 477. Appeals to board of assessment review

If the chief assessor or the State Director of Property Taxation refuses to make the abatement asked for, the applicant may apply in writing to the board of assessment review within 30 days after notice of the decision from which such appeal is being taken or after the application shall be deemed to have been denied, and if the board thinks he is overassessed, he shall be granted such reasonable abatement as the board thinks proper. Either party may appeal from the decision of the board of assessment review directly to the Superior Court, under the conditions provided for in section 481. Appeals to the board of assessment review shall be directed to the chairman of the state board of assessment review State Tax Assessor, who shall convene the board to hear the appeal and shall notify all parties of the time and place thereof.

Sec. 42. 36 MRSA § 484, 2nd, 3rd, 4th and 5th ¶¶, as enacted by PL 1973, c. 620, § 10, are amended to read:

If no abatement is granted, judgment shall be rendered in favor of the primary assessing area or the assessing district, and for its costs, to be taxed by the court. If an abatement is granted, judgment shall be rendered in favor of the primary assessing area or the assessing district for such valuation as the court shall find applicable and the court may make such order relating to the payment of costs as justice shall require.

If it shall be alleged in the application that the applicant has paid the taxes for which he has been assessed, and if the court shall so find, judgment for the amount of taxes equivalent to the abatement granted shall also be rendered against the municipality, or the State according to the taxing jurisdiction, and execution therefor shall issue as in civil actions.

Claims for abatement on several parcels of real estate may be embraced in one appeal, but judgment shall be rendered and execution shall issue on each ~~several~~ separate parcel.

The final judgment of the court shall be forthwith certified by the clerk to the Executive Committee and the municipal officers of the municipality or to the State Director of Property Taxation depending on where such tax was assessed.

**Sec. 43.** 36 MRSA § 486, sub-§ 7, as enacted by PL 1973. c. 620. § 10 is repealed.

**Sec. 44.** 36 MRSA § 1231, first ¶, last sentence, is repealed as follows:

~~None of the property described in this section shall be included in the state valuation as made for unorganized townships~~

**Sec. 44-A.** PL 1975, c. 15 is repealed.

**Sec. 45. Amended certification.** Notwithstanding the 2nd and 4th paragraphs of section 35 of this Act, the Commissioner of Educational and Cultural Services shall amend the certification made on January 31, 1975 to the Director of the Bureau of Property Taxation for public school education costs of 1974-75. Such amendment shall be considered as the certification required to be filed by law.

**Sec. 46. Adoption of school budgets.** Notwithstanding any provision of statute or charter to the contrary, legislative bodies of each administrative unit are authorized to meet to adopt or adjust school or municipal budgets at any time prior to May 30, 1975.

**Emergency clause.** This Act shall be effective for the distribution of state aid beginning July 1. 1975 and all other sections shall take effect when approved.

IN HOUSE OF REPRESENTATIVES,..........................1975

Read twice and passed to be enacted.

.................................................*Speaker*

.IN SENATE,..........................1975

Read twice and passed to be enacted.

.................................................*President*

Approved.......................1975

.................................................*Governor*

Answer of the Justices

To the Honorable House of Representatives of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit our answer to the question propounded on April 24, 1975.

QUESTION: Would the "excess assessment" provisions of Legislative Document 1452 (Exhibit A), if enacted into law, violate the provision of Article IX, Section 8, of the Maine Constitution, which requires that all taxes upon real and personal estate, assessed by authority of the State, be apportioned and assessed equally, according to the just value thereof?

ANSWER: We answer in the affirmative.

The question requires us to examine not only the purposes of the proposed legislation but also the means provided for fulfillment of the purposes.

Examination of L.D. 1452 makes it apparent the proposed bill is intended to effect changes in the present law which may be briefly summarized as follows:

1. It proposes to have the amount to be raised for education based upon actual past expenditures rather than upon future projections.

2. The "school tax" is renamed the "uniform school tax" and is redefined.

3. The impact minimization mechanism is redefined and named "excess assessment."

20 M.R.S.A. Section 3713(3)(E)(7) contains an impact minimization feature by providing that the maximum school tax which is imposed upon any taxing unit cannot exceed an amount which requires a tax rate increase in excess of 2½ mills higher than that previously required to produce sufficient revenue to discharge the school tax obligation.

L.D. 1452 proposes to change the impact feature by use of a technique which is described therein as an "excess assessment."

The result intended to be obtained by the "excess assessment" feature is the avoidance of precipitous increases in local property tax rate. It is the "excess assessment" provisions, however, which require us to conclude that, if enacted, L.D. 1452 would

violate Article IX, Section 8 of the Constitution of Maine.

The controlling reason that the "excess assessment" provisions of the proposed bill must be held to contravene said Article IX, Section 8 derives from the internal structure within which the bill has chosen to operate. It is calculated to provide the 50%

> "property tax share ["of the total cost of education for state appropriations"] through a *uniform school tax rate* applied to all administrative units alike." (emphasis supplied) L.D. 1452, § 13

Within precisely this framework, however, the proposed bill provides for an amount of "excess assessment" which, on the one hand, is excluded as "part of the uniform school tax levied under [proposed] section 451", but, on the other hand, is included (by Section 451) within the Commissioner's certification of the "total education costs" utilized to calculate the so-called "uniform school tax rate."[1] Moreover, although thus labelled and utilized as an "education cost" affecting all the municipalities, the amount of "excess assessment" is in reality, by virtue of the provisions of proposed Section 453, an amount which is (1) not relevant to all of the municipalities of the State but only as to some of them, and (2) as to those municipalities to which the "excess assessment" amount has relevance, the amount defrays at least part of the non-school "necessary expenses of local government."

By virtue of this exposition of the underlying structure within which the pro-

posed bill has seen fit to be operative, it becomes plain that, regardless of the labels affixed, in its true substance the end-result of the tax rate computational process is a "school tax rate" effectively higher in some municipalities than in others.

This point becomes patently clear if—by adherence to strict logic and the consistency of identification requisite for the accuracy of arithmetical procedures—we identify the end-result of the arithmetical computation by language correctly reflecting the substance of the use of the "excess assessment" as an element in the arithmetical process.

Since the "excess assessment" in reality represents a *non-educational cost* amount[2] and relates only to some municipalities, this true feature of its use in the tax rate computation process should be reflected in the identification of the bottom-line resulting from the arithmetical procedure. When this appropriate nomenclature is applied the ostensible single "uniform school tax rate" upon the property of all municipalities is shown in its true character as: (1) one school tax rate for all those municipalities to which the amount of the excess assessment is inapplicable, and (2) a separate rate of school tax for those municipalities having an amount of excess assessment, this latter rate being effectively lower insofar as the amount of "excess assessment" available to those municipalities is to be utilized for *non-school* municipal expenses.[3]

Thus, however well-intentioned, the "excess assessment" provisions of the proposed bill are a device which obscures the

---

1. Said Section 451 directs that the Commissioner ". . . include twice such estimated total state-wide 'excess assessment' in his *certification of total education costs* . . . ."

2. That the "excess assessment" is the amount by which the current year's "uniform school tax" exceeds a 20% increase over the municipality's previous year's "uniform school tax", does not, because of the references to

the "school tax", make the "excess assessment" amount a true educational cost.

3. This results from the provisions of proposed Section 453 that in a particular municipality which has the benefit of an "excess assessment" amount the Treasurer of said municipality shall apply such amount for non-school "necessary expenses of local government as determined or appropriated by the legislative body of such municipality . . . ."

basic reality that the property tax rate purporting to be a "uniform school tax rate" for all municipalities is effectively a higher rate in those municipalities which do not have the benefit of the amount of "excess assessment" for use in defraying the non-school "necessary expenses" of such municipalities.

Since the essential framework of the proposed bill has thus made its "excess assessment" provisions so integral a part of the tax assessment process and the calculation of the ultimate school tax rate, the "excess assessment" provisions cannot reasonably or fairly be looked upon as a legislative scheme for the "distribution" of tax revenues collected by the State which, under the authority of Sawyer v. Gilmore, 109 Me. 169, 83 A. 673 (1912), lies outside the scope of Article IX, Section 8 of the Constitution of Maine and is permitted to be unequal. Because the "excess assessment" is utilized as an element in the formula by which the school tax rate is computed, the tax assessment process is so directly affected that the requirements of Article IX, Section 8 of the Constitution of Maine become applicable.

The property tax rate resulting from the method in which the "excess assessment" is utilized in the calculation process effectively produces a "school tax rate" for particular municipalities higher than a "school tax rate" for other municipalities. In sum, the effect of the "excess assessment" provision is that a different rate of taxation for the purpose of raising money for public school education results in two classes of municipalities i. e., those which have, and those which have not, an "excess assessment." Such effective difference in the rate of tax assessed on the "full value" of property is constitutionally impermissible under the provisions of Article IX, Section 8 of the Constitution of Maine which expressly mandates that

"[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof; . . .."

Dated at Portland, Maine, this first day of May, 1975.

Respectfully submitted:

ARMAND A. DUFRESNE
RANDOLPH A. WEATHERBEE
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY